The next case we're going to hear is Red Apple Development v. Rufus Road Partners. And Mr. Burek, whenever you're ready, we'll hear from you. Thank you, Your Honor. Your Honors, good morning. My name is John Burek. With me is John Brickley and Preston Odom, my partners. Together, we represent Rufus Road, who is the defendant, sometimes referred to as the seller under the contract, and also the appellant in this case. For this court to affirm Judge Mullen's order, which denied our motion for judgment at the conclusion of the trial, this court must look at the words and the terms of the contract and not give them their plan in ordinary meeting. For instance, you must look at the term condition precedent and not use the legal terms of what a condition precedent is. You must look at the word immediately, immediately, and ignore the plain meaning of the word immediately. You must look at the term at any time, at any time, and not give that phrase its ordinary meaning of at any time. And what the plaintiff has done— Those last ones come from, I think, talking about how the default provision would work in, notice and cure would coordinate. Is that relevant for the first proposed closing date? I thought those were just relevant for the second one in January. No. The terms that I'm describing of condition precedent— Yeah, condition precedent is in there, but the ones about immediately and all that seem to have to do with whether notice and cure applies. Correct. So what we're describing is subsection three of paragraph four, which deals with the condition precedent. And what the contract says— So my question is just a factual clarification. That is, the notice and cure issue, that relates to the January, the argument that your clients didn't close in January when they're supposed to, but it's not particularly relevant for the December closing date. Is that right? Correct. The notice and opportunity to cure, if I could try to be precise, I think I understand your question. The notice and opportunity to cure argument is an argument that the plaintiff brings to suggest that if a condition precedent is not fulfilled, that the seller then has an obligation to notify them that a condition precedent has not been fulfilled and give them an opportunity to cure. That is the plaintiff's argument. Right. And I think you said correct, but I just want to make sure that I heard it. You agreed with me that that's relevant for the argument that you didn't close in January, but not relevant for the December closing date. Well, I don't know that I agree with that completely for this reason, and I think we can get to that later, but I'm happy to address it now. The effective date, the plaintiffs take the position that the effective date is now being moved. Oh, yeah. But we may have to get to that. So separating that, Your Honor, is correct. Okay. Separating out that issue, Your Honor, is accurate. Thank you. I like hearing that. Okay. So let's look at what section four of the contract says. Let's take a step way back. This is a diversity case governed by North Carolina law, right? Yes. And what it means for a contract to be ambiguous is governed by North Carolina law, right? Correct. And so they claim that under North Carolina law, where an agreement is ambiguous, the interpretation of the contract is a matter for the jury. Do you agree with that statement of North Carolina? I do agree with you that if you find an ambiguity in the contract, then it is for the jury to decide. Under North Carolina's definition of the ambiguity, not our free form definition of what ambiguity means. That is correct. Okay. Yes. I do not disagree with that at all. But my posit to the court is that if you look at this contract, it could not be more clear. So let's just go through it because I think it bears the effort. So what the contract says in subsection three of paragraph four, it says, I'm going to read all of it and then go back. The timely delivery of the additional deposit is a condition precedent to sellers obligations under this agreement. Can I ask you that then? Why, if that, if, if your strong version of that is true, as in, if they don't do that, you have like no obligations to do anything at any point, right? No, that's not what, that's not our position or no further obligations to do anything. We have no further obligations. If we terminate that is, that is our position. Judge Mullin made the, made the, why is that? So, um, because I was about to ask the why does it require you to provide notice of termination? Because it says in the contract, it does. Well, I know, but I agree, but a strong interpret your sort of maximalist interpretation of what a condition precedent means. I think the strongest version of that is, if that doesn't happen, you don't have to do a single thing in the world. No, that is not our position. No. And well, no, what I'm saying is that's what the strongest version of what condition precedent would mean normally in the world. If we had a contract that just said the seller's performance, blah, blah, blah, is a condition precedent of the seller's obligations and the contract just stopped. Yes. I think under that contract, the seller is literally never obligated to do anything unless the buyer does that thing, right? So, so a condition we already, I guess, do you agree with me that if the contract just said that the way we'd interpret that contract is the seller never has any obligations unless the buyer does that thing? Perhaps. Okay. It would, it would depend on what the rest, if that was just the one sentence of the contract. Yes. But if the contract has language like this one does, that says you have an obligation to terminate. So I guess, and I guess what I'm saying is I think we're agreeing, but I think what we know about this contract is that it's not a maximalist condition precedent because the contract then immediately goes on to give the seller obligations if the buyer doesn't do something, which is not the maximalist version of what a condition precedent is. Well, a condition precedent is an event that has to occur before a party has an obligation under the contract. There's a, there's another phraseology of it that I like even better. It says a condition precedent is an event uncertain to occur, but which must occur before performance is obligated under the contract. Right. So the best example one could give is if I am in contract to buy your property and the contract says that my obligation to close on your property is only if I get under contract with Judge Niedermeyer to buy his property. And then when I go to buy your property, I am not under contract with Judge Niedermeyer, then I have, an event has not been But certainly up until the due diligence period, and I would say until three days after the due diligence period, the seller had obligations. There's no question that it did. But what happens is when the condition precedent doesn't occur, if the buyer gives notice of its right to terminate, which is spelled out clearly in here, then it shall have no other rights. It shall have no other obligations thereafter. What, why, why is the next sentence in there? The next sentence is I'm assuming you're asking about except is set forth in this agreement? No, that if you, if you terminate before payment, you can, you can terminate thereafter if it's done before further payment. That's correct. It says if buyer fails to timely deliver the additional deposit is provided herein, seller may terminate, not asked to, but may terminate this agreement by giving buyer notice and the, uh, of termination at any time prior to payment of the additional deposit. And the escrow agent shall immediately deliver the initial deposit to the buyer. And thereafter, neither party will have any further rights or obligations under this agreement, except as set forth to the contrary in this agreement. Now, why, why is that termination notice required? If the condition precedent ended everything? Your honor, the condition precedent doesn't end everything. No, it's a condition. It's a gate to go through. It is a gate to go through, but, but, but, but by way of an example, the seller could elect not to terminate if they don't want to, they could not make the additional deposit and we could, seller could nonetheless go to closing. Then what does the contract say are the rights and obligations of both parties if there's not timely payment, but not termination? Well, the, the, the, the contract doesn't speak to what it could do, but. Is it ambiguous? No, that's not that the, the ambiguity, there's no ambiguity about what happens if under your hypothetical, the payment doesn't get made and we don't terminate because we terminate it. Well, no, not in December. Excuse me, not in December. The question is in the whole point with this December closing date is that timely, they did not timely make the additional deposit. Red Apple didn't. There was no termination. Correct. Then Red Apple says, we want to close and they haven't paid anything, but they say, we want to close. And they say, you had an obligation to close. They say the seller had an obligation to close. So that's what we're left wondering. The contract leaves us wondering, what are the obligations? Does the, does the buyer have to make the additional deposit before the seller's required to close? Do they just have to say they want to close? This paragraph doesn't tell us that it's ambiguous on that point. Well, with respect, Your Honor, the, the, the, the facts in the case, the record evidence before the court is that when the request to close was made, the parties did not close. There's no question about this. But what's your position from the contract on what the contract says about if the additional deposit is not timely made, the seller doesn't terminate, then what are the, what are the obligations of the parties? What does the contract tell me? Well, the contract presumes that the parties, if they want to continue to a closing, can continue to a closing, but that, that ambiguity, if there is one doesn't address at all the facts that are before this court at this point in time, because there was a termination. So you're inserting a fact, if they don't terminate, what happens? Does that make it ambiguous? Perhaps. I don't think that it does, because I think the parties aren't. But you just agreed with me that the, about the termination had to do with the January closing date, not the December one. There was no declaration by the seller that we are terminating. Rather, the buyer said, we want to close. And then it never happened. It never, but, but, but the reason that it never happened is important. And the reason that it never happened in the record at trial, the evidence was presented that the parties didn't close because they were continuing to negotiate. And there's a provision in the contract that says closing cannot occur until all of the issues are resolved. And if you look at exhibit D. Well, this is, I mean, this is getting into the jury's factual determinations. The only, the question for us here is just the gateway question of, is there an ambiguity in the contract that would allow that question that you're talking about right now to go to the jury? Does the contract foreclose that? And it seems like you've agreed the contract doesn't foreclose that. I'm not saying that the contract does foreclose this issue of what you're suggesting is a, is an ambiguity based on facts that didn't happen. I mean, you're, you're, you're creating an ambiguity by changing the actual facts of what occurred. The facts before the court were that there was a termination before an additional deposit was made. And what judge Mullen said was that the ambiguity was created because the phraseology at the end that said, except as set forth in this agreement, the provisions will proceed, that that made it ambiguous. The fact that there was an obligation that you had to terminate did not mean that we, the position he assumed we were taking, which we were not taking, that we had no obligations. We've never, we've never taken the position that the moment they obligations under the contract, we've, we've never said that we've, we've just taken the position that if we terminate, isn't that the defense? In other words, the condition precedent said you had to pay $200,000 by December 13, right? The, the, the buyer date, December 13, the buyers call for a closing on December 17. They did not, had not made the, uh, the payment correct. And therefore there was no obligation to go to closing. There was no obligation to closing. We could have terminated the contract between, I didn't ask you that. I said at that point, there was no obligation to close, right? Correct. All right. Then the contract permitted you to terminate and, uh, you terminated January 16th. Correct. And then they finally paid on January 18 and wanted to close. That's correct. And your argument is for the same reason that there was no payment of the deposit as a condition precedent. There was no obligation to close. That's correct. So I don't understand why you're making a distinction. It seems to me both times for the demand for closing, uh, both times the condition precedent precluded, uh, uh, your obligation to close. That's exactly, that's exactly right. We, we, we take the, well, it wasn't totally clear of a way you were, I'm sorry. Yeah. To be, to be clear about it, the position that we're taking is that the contract's not ambiguous. Well, if your position is there's no obligation to close, period, if timely payment isn't made, no obligation, then you get into Judge Mullen's, there were multiple ambiguities he found. It wasn't just at the end of this paragraph. You get into the question about, well, why is there this talk about if the buyer, uh, prior to any payment of the additional deposit, it suggests that the buyer might make that payment later in an Your Honor, if you, if you look at the language and it says that, that, that the timely delivery of the additional deposit, if you look at the sentence above that, buyer shall no later than three days after the expiration of the due diligence period, deliver the deposit. That's the timely deposit. Right. And then later, later in the paragraph, it doesn't use the word timely. It says you can give notice termination at any time prior to payment. That's right. Right. So Judge Mullen is pointing out there's a timely payment requirement. That's what you're, the condition precedent language in here. And you're saying if there's no timely payment, condition precedent not met, we don't have to do anything. We don't have to close. But then the next, the next sentence says you can terminate any time prior to payment. That's right. Which indicates they can make an untimely payment that then might, maybe that would trigger something, or maybe you have obligations before an untimely payment is made, et cetera. This is one of the ambiguities that he was pointing out and that presumably Judge Whitney relied on also when he agreed that it was ambiguous before Judge Mullen made this ruling. Right. But to be clear, if, if Red Apple was obligated to make a payment by December the 13th and did not make the payment until let's just say December the 30th, and we had not terminated between December the 13th and December the 30th, then the condition precedent would have been satisfied. No, it wasn't. It wasn't timely. They have to make the timely payment, but we also have to terminate. So if the payment's made before we terminate. Boy, that seems ambiguous. I don't know how that's ambiguous because that's exactly what the contract says. It says if the buyer fails to timely deliver the additional deposit is provided herein, seller can terminate this agreement by giving notice at any time prior to the payment being made. So anytime before they make it, that means if they make it. What suggests to me though, is gets back to the original question of the condition precedent. The condition precedent requires payment by December 13, three days after the December due diligence period. Yes, your honor. At that point, uh, there are no further obligations based on the language. That's correct. But then the next sentence says, according to what you just suggested, that if there was no termination thereafter and they made a payment on December 20, that would be okay. Well, that's because the, the sales, isn't that what you said? That is what I said. That seems to be contrary to the December 13 mandate. No, because what the contract says is we have to terminate the contract before they make the payment. So if they make the payment, it's not a real condition precedent. Well, no, because the condition precedent is that they have to do this and it gives us a right to terminate if they don't. But we don't have to exercise that right. It's not an obligation. It's an event that has to occur. So your, your argument is that the condition precedent is a condition precedent that authorizes you to terminate if not performed, if, if, if the event does not occur. Now let's take the hypothetical where, uh, flip the January date. Uh, they give you the check on January 16 and on January 18 you term try to terminate. Then, then according to this contract, they would have made the payment before we terminated and we would not be able to say that the condition precedent wasn't satisfied. Okay. What's the, what's the meaning of the, uh, condition precedent that says you have to pay within three days? What's the meaning of that? That's just the timing of it. But you've got to reset it. You just said under my hypothetical, the January 16 payment, uh, uh, if they hadn't been terminated by then, the January 16 payment would, uh, be fine. That's, that's right. But then that's not what the previous sentence says. Previous sentences has to be made by December 13. Okay. The, the, the reason for that is because if the condition precedent is not satisfied, it triggers in the seller a right that the seller has to, if it wants to exercise, if the seller does not exercise that right to terminate prior to the payment, then even if the condition precedent is not satisfied until later, that next sentence has got to be, you've, you've still got to be governed by the contract language. If they hear what it says. If the condition precedent sentence had left off the three days and said, uh, uh, after just simply said, you have to make a, as a condition precedent, you have to make a $200,000 payment. Uh, and if you don't, uh, make the payment, uh, before we terminate, uh, uh, if you make the payment before we terminate, the contract keeps going. Uh, I think your best argument, uh, it seems to me there's tension between those two sentences, but it seems to me that your best argument might be that the ambiguity, uh, that is described by that, those two sentences is irrelevant in this case because, uh, the alternative interpretation also was not satisfied. Well, and that's what I was trying to say to your honors questions is that the hypothetical that was posited, what happens if that didn't happen here? And there's no question that when you're interpreting a contract, we all know this in this room, that when you're going to interpret a contract, you must give meaning to all of the words in the contract. Well, the ambiguities also have to be relevant to the issue in the case without question, the fact that you have an insurance clause at the end of this thing, that's ambiguous would not affect this case. That's right. And, and, and there, but, but, you know, from a factual perspective, there is no question that the seller terminated the contract before the additional deposit was made. I mean, that's ironclad proof. There's a letter that comes from me to the, to the buyer that says, Hey, we don't believe you've made your additional deposit and we're terminating the contract. If we're wrong and you've made it, we still have to negotiate all these road issues. So let's get back together. And Mr. Conner, his office writes back a letter. Those are all hypotheticals. You ought to stick with the facts of the case and the ambiguity then disappears, right? But those are the facts that I'm reciting to the court. The fact is they didn't make payment December 13. You have a right to terminate and maybe that payment could be made later, maybe, but they didn't. And, uh, you did terminate, uh, uh, after the failure of the condition and the contract ended, that has to be your argument. And any ambiguity is irrelevant to what happened in this case. And in addition to that, it terminate at any time. So we could terminate after the matter. See, that's a hypothetic. You terminated January 16. Correct. And that was before they made any payment. That's right. All right. My time is up. I'm sorry. You went through a red light, but we won't give a citation. All right. All right. Uh, uh, Mr. Benzinger. Thank you, Your Honor. Good morning. Uh, may it please the court. Um, this is the fourth time that Rufus Road has made the very same arguments this panel heard this morning. It made the same arguments before. Does that make a difference? It does make a difference because under the, uh, it seems to me they can make any argument they want to us, right? We can decide whether it's a legitimate or not. That's correct. But based on the standard of review, we have here on appeal from a rule 50 B decision. That means that the burden that Rufus Road has years is the district court stuck by its guns. That's fair enough. That's correct. All right. Um, and when it did so, it was correct in reasonably reading several different take my where we left off. Uh, when I was talking to Mr. Burek, uh, I understand the difficulty in the two sentences, but, uh, my question to you would be that is that ambiguity relevant to the issues in this case? Because the facts as I understand them is that on December 10, uh, there was an obligation to make a payment within three days and it was not made. Uh, and on Jen and, uh, the next sentence says, if it's not made, uh, uh, the contract can be terminated. It was terminated and no payment was made and the payment was not made until after it was terminated, which was ineffective now because, uh, uh, the contract clearly gave that sequencing, right? Why is the ambiguity relevant in this case at all as to whether they could have made a payment on December 20th or December 15th or whatever? Uh, it, it seems to me what actually happened here was no payment was made. The contract was terminated, uh, and, uh, uh, which clearly ended all the obligations. Well, the answer is that there are multiple ambiguities in this contract. Okay. Fair enough. Go ahead. I was alluding to the, uh, to the suggestion that if payment, uh, it, uh, it, it can be terminated before payment is made. That's right. And that's it. That's an ambiguity, apparently of some kind we've identified the problem with that. That's correct. And your questions and Judge Rushing's questions certainly identified that ambiguity, but the ambiguity that you're identifying in, in what's another one now, what, what is the other one that's material to the resolution? So the discussion before, uh, ignored for the most part, sentence one in section four, Roman at three, um, sentence one actually stands up another condition precedent. It says in the event that the buyer does not terminate this agreement during the due diligence period, and that didn't happen. The buyer did not terminate the agreement during the due diligence period. Um, the buyer shall, shall no later than three days after the expiration of the due diligence period, deliver the additional deposit deposit that's mandatory obligatory language in, in, in the provision that, uh, uh, was not discussed earlier today. Yeah. But what does that make? It makes a difference because they didn't, they were told to make a payment under the agreement that payment wasn't made. And the agreement clearly authorizes the other party to terminate well before, uh, uh, before payment is made. The agreement also clearly says in section 20 Roman at one, that the failure to satisfy any obligation is subject to the contracts, notice and cure provision. Now, this is not a breach that's addresses breaches. Well, there's no breach. If they failed to close, that would be a breach of an obligation, but a condition precedent is not a breach. My condition precedent is, uh, the condition that has to occur, the gate that has to be gone through before the next obligation occurs. The point I'm making your honor is if you look at that, but that's not ambiguity. Well, if you look at sentence two alone, which is what Rufus is asking the other condition precedent sentence. Yes. It says the timely delivery of the additional deposit is a conditional precedent sentence one separate from sentence two. And under North Carolina law, this court is obligated to sentence one says that the timely delivery within three days of the closing due diligence of the additional deposit is an obligation. Maybe it's a condition precedent under sentence two. That's the obligation of the purchaser in order to get the property. And it's, and that obligation is a condition precedent to any performance by the opposing party. But the fact that it is an obligation makes it for one party side. If he wants the contract, he has to pay 200,000 bucks. Correct. Well, 5,000 plus the 200,000 on, on the part of red apple. It was an obligation. I don't see that as being ambiguity at all, but uh, the ambiguity arises when you take account of the notice and cure provision that incorporates. But would red apple be in default if it didn't make that timely payment? Well, subject to the notice and cure provision was says that the failure to say, no, it wouldn't. It's a condition precedent. They have to make the payment if they want to this wouldn't be a default. They couldn't be sued, right. For breaching the contract. If they didn't make this additional payment and the notice and cure provision relies on a defaulting party, no default shall occur unless notice is given and a chance to cure. I mean, you're, it seems like you're barking up the wrong tree. If you're saying that this was an obligation that if the, if red apple didn't fulfill it, it would be in default. Um, and then it contradicts, you know, the immediately language and all of that, right. To say that, no, we get three days to cure. Well, I agree. It contradicts the, and also it contradicts the notion that you can terminate unilaterally during the 90 day period. I agree with that. But the fact that there's a contradiction in those two provisions, I think, I think that you're reading the first sentence gets you nowhere. I think all it does is said, if you want to go ahead with this contract, you have to pay $200,000 by as specified. The ambiguity comes is whether that 200,000 has to be done within the three days or whether there is some allowance for it being made later. That ambiguity. And, uh, uh, uh, my question is why is that ambiguity and the facts of this case relevant? Because in any event, if it is ambiguous, neither condition was satisfied, it was terminated before payment was made. And under those circumstances, the contract ends. I, uh, I'm trying to figure out how do you get around that? Well, two responses, not relying on the condition, uh, the, the notice and term provision. One is that if you take a step back from this, this contract and look at how this contract and deal was supposed to play out, um, in, in, in the abstract, the additional deposit requirement was supposed to provide the seller with an assurance after due diligence that the buyer remained interested in the property and the deal continued to move towards closing. In this case, that assurance was provided by the buyer, not through the form of an additional deposit. 200,000 wasn't paid. You said that 200,000 was to provide assurance. It was never paid. It was not paid by December 13th, but. It wasn't paid before termination. That's correct. But it makes no, it doesn't make sense for the parties to have intended the additional deposit to essentially be a kill switch to this contract. Well, that's what it says. I thought you had an argument and maybe I'm wrong that this was in your brief, but I thought you had an argument that there's an ambiguity about what obligations exist if this deposit is not timely made. Does the, does the deposit have to be untimely made to trigger further obligations on the seller's behalf or does the seller continue to have obligations even if the payment is not enough to go to the jury? But it sounds like you're not pushing that position here. Am I wrong? Well, our position is that there's several ambiguities in this contract. I'm trying to get through several of them and that is certainly one of them is that the phrase in section four, Roman at three, except to set forth to the contrary in this agreement suggests that even if the deposit is not timely delivered on the 13th. Well, there were obligations in the agreement that survived the agreement. For instance, the due diligence, uh, you obtained information and you'd have to turn that over even if the contract is terminated. Correct. But okay. That's what that's alluding to, isn't it? It doesn't specify exactly which. No, but it's alluding to anything that survives the contract and that did survive the contract. Well, it's, it's unclear which obligations and rights survive. What else would be addressing if you terminate, uh, there's no requirement to go to closing. It was a condition precedent to go to closing. Well, one argument we made in our brief is that the, it incorporates the noticing cure provision, but I don't understand why you keep insisting that a condition precedent is an obligation that is, uh, goes in default. A condition precedent is a, uh, a condition, a gate through which you have to go to get a benefit. If you choose not to make it, you don't have to do it. You're not in default. If you fail to pay the 200,000, our position is just, and I don't understand why a notice and cure relates to a default of an obligation. And this is a condition precedent to any obligation. This is your way to get forward with the contract. Give 200,000, you can keep going. Well, I'm happy to move on from this argument, but our position is the simple proposition is that sentence one of this section makes it an obligation and sentence 20. Then answer, then answer rushing's, uh, judge rushing's, uh, question. If you failed to pay the $200,000, would that be a breach of contract? It certainly would allow the other side to, in their discretion, terminate the agreement. Then what's the next sentence mean? Where it says, uh, uh, it's a condition precedent to you're going forward. And also you have the period where you can, uh, quit at any time. Well, our answer is that that therein arises an ambiguity. It's not clear whether it's supposed to be a pure condition precedent or an obligation that's subject to the notice and cure provision. Um, but moving that moving on from that argument, there's a, uh, another legal doctrine separate from the, uh, the strict contract language that we think allows the court to read this contract, uh, in our favor. That's the, the rule of, uh, uh, time within a reasonable performance. And in North Carolina, um, the doctrine of, uh, reasonable performance says that without an express time as of the essence clause dates within a real estate contract can be performed within a reasonable time of the date set out in that, that, uh, contract. Yeah, but there's a sequence built into this contract and the sequence says you have to pay $200,000 to keep going. And if you don't pay it within a, uh, before they terminate, they can terminate. That's right, Your Honor. And I don't know how you get by their termination, but if their termination was legal, that ends the contract. Well, under the reasonable time to perform rule, if under what reasonable time to do what after they terminate it, this is before this, I'm talking about the December. Well, we did, but you had a reasonable time. If you're going to interpret that way, there's the ambiguity, whether you had to make the payment by December 13 or by December or January 15, but if you did neither, well, so in this case they terminate. So the question is, is there any legal barrier, uh, to the fact that the contract was legally terminated? Yes. Under the reasonable time to perform rule, if there's an ambiguity about whether untimely payment or payment after the 13th would satisfy this condition precedent, Rufus was on notice. Under that, uh, you didn't make payment, uh, you didn't make payment for over a month, uh, and, uh, they terminated. And so your relief now is that it's reinstated because you made payment after they terminated. Well, Red Apple was prepared. It's a stipulated fact that Red Apple is ready, willing, and able to. No, I'm asking you, it's not the ready, willing, and able. The question is, you want to reinstate the contract even though you didn't make the payment and they terminated? It's not that we want to reinstate the contract. You got to because they terminated. That wasn't a hollow act, was it? It wasn't a hollow act. They followed the termination provision in Section 4, Roman at 3, but under the reasonable time to perform rule, I'm saying that there's an ambiguity the court can resolve in our favor before we get to that point. I know, but the ambiguity doesn't affect the termination. In other words, the termination did occur, and under any interpretation on the ambiguity, you don't get that payment made before termination. The contract's pretty clear that payment was a condition, uh, uh, that non-payment was, uh, allowed them to terminate. And there was non-payment and they terminated. And they didn't breach anything in terminating, did they? I think it would be helpful kind of to orient this conversation with a case that came up in the briefing on the reasonable time to perform rule. This is the Gaskell case in North Carolina. Um, this is not the performance of, uh, obligations. And, uh, I understand your argument, but you're misconceiving, uh, the, uh, contractual obligations which, uh, have grace periods, uh, and have reasonableness attached and cure aspects with conditions precedent. I'm, I'm, I'm really not trying to dance around your question, Your Honor. I am trying to answer your question. Um, I, I, my point is that there's case law in preclosing conditions, not just obligations under a contract. The additional deposit requirement, even under Rufus' conception of it, is a preclosing condition under this contract. Cases like Harris and Gaskell applying North Carolina Supreme Court precedent in Fletcher say that, um, the reasonable time to perform rule and not strict contract dates can apply to, um, preclosing conditions if it's ambiguous whether a time is of the essence clause set and strictly require a... Well, how about if we give you the benefit of that so you didn't have to pay by December 13th? Right, the... Right? It's a stipulation... Okay, so you pay within a reasonable time, but during that reasonable time, they terminate it, right? Well, not if you... They never... You never made the payment during that reasonable time because once you get to We noticed an intent to close on December 6th, which would have been a December 17th closing date. The amount we were ready and willing to pay on that date would have encompassed the additional deposit. It would have been the entire purchase price with the additional deposit wrapped up in it. The reason that Rufus doesn't have the additional deposit today is because it didn't come to the table and close on that date. Four days, two business days after the December 13th deposit deadline date is well within the parameters of what North Carolina... And just the same way, you could have paid this when you sent them the notice to close. You could have sent them the $200,000 and said, I want to close on the 17th. That's true, but again, I'll refer you to the Gaskell case. It's very similar to this one. In that case, the buyer was subject to a... This is not a timing issue. This is a total failure issue. This is not a timing of the payment. If you had paid on December 4th before the closing, that argument might be applicable, but you never made the payment at all. You never satisfied the condition at all before it was terminated. Before the notice of termination was sent. Right. The points I'm trying to make are that under Gaskell, which is a very factually similar case, the court dealt with a condition that wasn't satisfied in the strict date set out in the contract, but was able to be made on the closing date itself, just like was the case here. And that court reversed a trial court decision saying that the seller was entitled not to close in that case, which is exactly what happened here. The facts are almost identical to this one. It means that the reason... I don't want to hijack you here at the end of your argument, but we have to... A preliminary of that is that there's no times of the essence clause, right? All of this is... This discussion presumes that there's not a timeliness clause in the contract. Not exactly, Your Honor. Even in Gaskell and Fletcher and Harris, there were times of the essence clauses in those cases. There were general times of the essence clauses in those cases, just like there is in this contract. But the point of Fletcher and footnote one is that when there's ambiguity about whether these dates are supposed to be strict or whether compliance is required to be on these strict dates, the times of the essence clause doesn't necessarily apply to pre-closing conditions without a separate times of the essence clause that strictly relates to the pre-closing condition. And that is not present in this contract. There is no separate times of the essence clause with respect to the additional deposit requirement. Okay. I see we're gone beyond our time. I gather because we have the cross appeal, we might as well go through, even though you didn't talk about the cross appeal, we'll give you a response time if you want. This is on the stipulation, right? Yes, Your Honor. And I do want to just echo what Judge Rushing said, is that the time is of the essence provision. It covers the entire agreement. If you look at paragraph 25, it refers to the of the document. The agreement is referred to as the entirety of the agreement. Can I ask you a framing question? Yes. Have you cited any cases where a North Carolina appellate court or this court applying North Carolina law has reversed a jury verdict in a contract case? Say that last part one more time. Reversed a jury verdict. This case was submitted to the jury on the theory that the contract was ambiguous. The jury ruled against you. So your only argument is that as a matter of law, this contract wasn't ambiguous, never should have been submitted to a jury. Have you cited a case where a North Carolina appellate court or this court applying North Carolina law reversed a jury verdict in these situations? In candor, I don't know the answer to that question, whether or not any of our cases came out that way. But the question before the court is whether or not the interpretation that the plaintiff is suggesting is a reasonable interpretation. And I would totally fair that it does not. And I don't think that there's any question what the term means is that at any time you can terminate before they make the deposit. And as Judge Niemeyer has suggested, we did use that. With regard to the stipulation, as the court will recall, as this court will recall, the parties that entered into stipulations, written stipulations, stipulation number four was that the contract had an effective date of September the 10th of the year 2018. The parties agreed to that. Now I will suggest to you that that date is echoed by written correspondence that in the ray line from the buyer referenced the contract and said that it had an effective date of September 10th. It echoes the conclusions in the complaint that said the contract was entered into on September the 10th. So all of that is consistent. Moreover, and I think most importantly, if you look at what was marked as exhibit number two by the plaintiffs in their case, which begins at the joint appendix page 1700, there are email correspondence and traffic. Pardon me. And that email correspondence, that email traffic was what the plaintiff says was the genesis of their surprise and ambush that they weren't aware of this document that they fully acknowledged was in their own records and had been in their own records since September of 2018. And in those set of documents, if you go back and forth between them, there is an email from Ryan Companies who copies Nick Diamond, who is with Red Apple, and he sends an email to Stan Howey and he says, hey, we have signed this contract, look at it, and we've inserted dates in the contract. And the dates that we've inserted are the due diligence date, which is December the 9th, and the outside closing date, which is January the 9th of 2019. Do you agree with those dates? And Stan Howey writes back and says, yes, I do accept it and receive it. And the gentleman from Ryan Companies sends an email back and says, great, thanks, or words to that effect. The exact words are, thanks, Stan, and copies Nick Diamond on that, who is Red Apple. And what the plaintiff was arguing below was they weren't aware of this document and that because of this document, it changes the effective date. So if you take this conclusion that they're reaching, I would posit to you that it is as much of a gymnastic exercise as the exercise on the condition proceeding argument, which is that we send you a document and we say, hey, we want you to agree with us that the due diligence period is December the 9th. Will you agree with that? And we write back and say, yes. And now they want to say, okay, well, that's not the date. It's 10 days later because of this email. And if you look at the language of what creates an effective date, they would ask you to conclude that the effective date is triggered by the date that the electronic transmission of the signature page is delivered. That's what they're trying to read into this, which is not what the document says. The agreement says the effective date of this agreement shall be the date on which the last of the seller and buyer has executed this agreement, which is undoubtedly and indisputably September the 10th, and each executing party on the day of execution sends the other party an electronic copy of the signature page. So if Red Apple signs it on September the 10th and doesn't send it ever, I guess we don't have an effective date according to them. But that might- We don't know whether it was sent or not. The emails don't talk about whether the signature page was sent. Precisely. Now- The record does not support that that wasn't complied with. Well, it actually supports the opposite of that. Well, I don't know if it does that either. Well, here's why I'll say that to your honor. Except the letters do. Everybody assumed the 10th was it, and they said- There's no question. But there's no question that on September the 20th, Stan Howey only sends back page eight revised, which is the very page that they include in the complaint, by the way, that they have. And he never sends a signature page on that day. So, and I don't think that a plain reading of the contract requires that the effective date be triggered by the delivery of the electronic signature page that's witnessed. But even if it's not sent- But the standard that the court has to apply here is, was there an abuse of discretion by the trial court in not permitting? We're not on the eve of trial. The jury literally, the back doors were opening and the bailiff was You can hear the judge say to the bailiff, keep them out there for a minute. And I could be corrected, but my memory, because I was there, is that we spent the better part of an hour dealing with this, such that we didn't come back and panel the jury until after lunch. And we were starting at 930 in the morning. So there's no abuse of discretion is our position. All right, Mr. Burek, you can address the stipulation. Thank you, your honor. There's actually two standards and two ways that the court can get at this question. One is the abuse of discretion question that counsel was referencing. The other is Rule 50E, Federal Rule of Procedure 50E. And in this circuit and under Supreme Court precedent, the touchstone of the Rule 50E analysis is fairness to the parties. What would be fair to do if this court reverses the Rule 50B decision and decides what to do next? Let me ask you this. You actually wrote a letter, your client, indicating that the effective date was September 10. And December 9 is the end of it. And it's in your complaint. And everybody was operating under that notion. And then you come up with these emails. And the emails don't address any inaccuracy about those dates that had been assumed. The only way you could address it is that if there had not been an exchange of the signature pages. And the signature pages, the new record doesn't reveal anything about the signature pages. So you have advanced the ball no way to say what you agreed to and what you had assumed before was in error. And yet the parties all that the contract was final and the signatures had been made. It seems to me it's hard to say the district court abused its discretion when you haven't even come forward to say, demonstrate that the signature pages had never been sent. Well, again, Your Honor, there is the abuse of discretion section. Address the facts, if you would. Okay. The question before the district court was whether this question of whether the effective date was actually September 13th or September 10th. Well, it's dependent on the signature page, right? Yes. And the contracts anticipated the signature pages would be circulated on the date it was signed, the last signature, which was September 10th. But my question is, are there any facts to suggest that the signature page had not been sent? On September 10th? Yeah. The facts appear to be that the first time that the signature page was ever sent and circulated amongst the parties after the both sides had signed, it was September 13th. That was just sending a whole copy of the document, wasn't it? There's an email from Nick Diamond. But that doesn't exclude the fact that the execution date wasn't satisfied. And the real question is, up to that point in time and you're about ready to begin trial, you agreed to all this. Everybody, the question is, you start on a whole course of dealing and you're assuming September 10th is it. The parties conduct themselves the way September is it. And then you come up as the trial's about ready to begin and you say, oh, there's an email where I see a whole copy was sent a few days later. I think an original copy, I think the email indicated. And you suggest that that's the first time, but the email doesn't say that. Well, it's difficult to prove that something never happened before that date, right? We can't show you an email saying that we never sent this. The evidence that we see is that the first date that we know of that this contract was actually circulated was September 13th. We're not aware of any evidence that shows that it was sent on September 10th. And to my knowledge, Rufus has not been able to provide any such evidence either. Let me ask you this just as hypothetical. The second person to sign, signed on September 10th, right? That's right. What if he called up the other guy and said, I just signed the contract. We're good to go. The other guy says, great. I don't think that would comply. I know that's what your argument would be, a little silly, wouldn't it be? Well, not to set the effect. And the other guy could say, well, send me an email, send me an email of it. And he could say, sure. Or he could say, no. I mean, aren't we talking about how many angels are on the head of a pen? It seems to me when you go through the whole process of administering the contract with the assumption that it was signed and executed effective September 10th, and you acknowledge it in your letters, and you acknowledge it in your complaint, and then you say, I'm justified in changing my mind on the date of trial because there was a page 8 sent. That's what you showed to the judge. And he listened to you out, and he said, you can't be relieved now and change the rules that have been agreed to. Anyway, I understand what you're arguing, but it's hard to prove a negative, sure. But it's also the burden on you is to prove it. So there were several issues in there. I'll try and respond to all of them. Well, your time is up. I'll give you 30 seconds. Okay. The first is that this isn't an inconsequential issue. This is the effective date of the contract, and it's a very important date. It's not as if we're arguing over something that shouldn't have an effect on the case. The second point I'll make is that this whole discussion that we've which is only half of our cross appeal. The other half is under the Rule 50E standard, and that standard suggests that it would be fair to retry this case if necessary under the facts as they actually were, not under a stipulation that was potentially false. I don't even see the facts being different because there was a confirmation that the due diligence date ended on December 9, too, and you guys agreed to that. I mean, the record is just full of ratification of the September 10 date, and for you to reverse that would be a question of fairness. But anyway, all right. We'll take this under consideration. We'll come down and adjourn court for the day and then come down and greet counsel. This honorable court stands adjourned until this afternoon. God save the United States and this honorable court.
judges: Paul V. Niemeyer, Allison J. Rushing, Toby J. Heytens